IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARTIN C. MELTZER, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 11-563-RGA |
| CITY OF WILMINGTON, | : | |
| Defendant. | : | |

G. Kevin Fasic, Esq. (argued), COOCH AND TAYLOR, P.A., Wilmington, DE.
    Attorney for Plaintiff Martin C. Meltzer.

David H. Williams, Esq. (argued), MORRIS JAMES, LLP, Wilmington, DE.
    Attorney for Defendant City of Wilmington.

March 26, 2013

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff Martin C. Meltzer filed the instant action on June 24, 2011. (D.I. 1). The complaint alleges that the City of Wilmington retaliated against him after he filed a charge of age discrimination under the Age Discrimination in Employment Act ("ADEA") with the Delaware Department of Labor and the Equal Employment Opportunity Commission and, later, a complaint in the Delaware Superior Court. (*Id.*). On February 22, 2012, the City filed a motion for summary judgment based upon res judicata and collateral estoppel. (D.I. 17). On July 5, 2012, this Court issued an order granting in part and denying in part that motion. (D.I. 25). Specifically, the Court granted the motion as to Meltzer's claim that a February 2007 written disciplinary warning constituted retaliation but otherwise denied the motion. (*Id.*) Discovery in this case is now complete. Pending before the Court are the parties' cross motions for summary judgment on Meltzer's remaining claims of retaliation. (D.I. 47 and 50). The motions have been fully briefed (D.I. 48, 51, 57, 59, 62, and 66) and oral argument was held on February 20, 2013. For the reasons that follow, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.

## I.    BACKGROUND[1]

Meltzer has been employed as an Assistant City Solicitor in the City's Law Department since 2002. In January 2007, Meltzer filed a charge of discrimination, alleging age discrimination under the ADEA. (D.I. 52 at 4). Meltzer accepted an assignment to the FED UP Program with the U.S. Attorney's Office in February 2007 and began working there in March

---

[1]    The relevant historical facts are generally well-documented and not subject to dispute. The parties were already in litigation in the Superior Court, both represented by outside counsel, and communications were generally in writing.

1

2007. (D.I. 49 at A1-2). Meltzer was scheduled to return to the Department on February 21, 2008. (*Id.* at A3).

In December 2007, Meltzer filed a complaint in the Superior Court, alleging, among other things, discrimination and retaliation. Following the filing of the complaint, in January 2008, the City requested that Meltzer obtain an advisory opinion from the Delaware State Bar Association Committee on Professional Ethics concerning whether Meltzer's status as plaintiff in a lawsuit against the City would create a conflict of interest with his position as an attorney representing the City. (*Id.* at A53). Counsel for the City and Meltzer exchanged several letters over the following months concerning the potential conflict of interest and Meltzer's return to work. (*Id.* at A54-55, A56-57, A58-59, A62, A63, A64-65).

On February 21, 2008, the Chief of Staff for the City wrote to Meltzer advising him that the City had requested an opinion from the Ethics Committee and that Meltzer would be placed on paid temporary leave pending receipt of the opinion. (*Id.* at A63). The Ethics Committee informed the City in March 2008 that only Meltzer could request the opinion. (*Id.* at A66-67). The Committee, however, did issue an informal opinion on April 9, 2008 regarding the ethical obligations of Meltzer's supervising attorneys. (*Id.* at A68-69). The opinion stated, "[i]n order for you (as supervising attorneys) to comply with this rule, you must not ratify any conduct causing a violation in the [Delaware Lawyers' Rules of Professional Conduct] and must take remedial action so the employee attorney is not in violation. If you fail to do so, you may be held responsible for the ethical violations of the employee attorney." (*Id.* at A69).

The City continued to request that Meltzer secure an opinion from the Committee over the course of seven months while Meltzer was placed on paid leave. Meltzer refused. (*Id.* at

2

A70-77, A78, A18-20). On May 5, 2008, counsel for the City wrote to Meltzer's counsel and stated that Meltzer would remain on paid leave through May 16, 2008 and that the City would honor an agreement to provide Meltzer with sabbatical leave at half pay from May 19, 2008 through July 25, 2008. (*Id.* at A72-73). Counsel for the City further stated that Meltzer would be permitted to return to work as an Assistant City Solicitor on July 28, 2008 only if he provided an opinion from the Ethics Committee stating that his duties as Assistant City Solicitor would not violate Rule 1.7 of the Delaware Lawyers' Rules of Professional Conduct. Rather than obtain an opinion from the Ethics Committee, Meltzer instead obtained an expert opinion from Charles Slanina, Esquire on July 21, 2008. (*Id.* at A-79-82, A21).

On July 24, 2008, Meltzer e-mailed then-Chief of Staff, Bill Montgomery, and then-Director of Personnel, Monica Gonzales-Gillespie concerning his return to work. (D.I. 52-1 at 7-9). Specifically, Meltzer requested to return to work on July 28 and that he "be afforded a fair hearing prior to the termination of benefits or employment, in accordance with the Wilmington Personnel Manual and any applicable City Code ordinances." (*Id.* at 8-9). The City responded on July 25, 2008 notifying Meltzer that he would be placed on "no pay status" and further directed him not to report to work on July 28, 2008. (D.I. 49 at A118). The letter further stated that Meltzer would be terminated effective August 1, 2008 if he "fail[ed] to provide documentation that [he had] requested the advisory opinion from the [Ethics] Committee on or before August 1, 2008." (*Id.* at A119). It is undisputed that the City did not hold a due process hearing in response to Meltzer's request.

Ultimately, Meltzer complied and requested the advisory opinion from the Ethics Committee prior to the August 1 deadline. The Ethics Committee issued the opinion on October

3

2, 2008. (*Id.* at A123). The Ethics Committee concluded that Meltzer's "continued employment by the City as an Assistant City Solicitor does not constitute a violation of DLRPC 1.7." (*Id.* at A124). The opinion, however, also noted that "if Attorney's duties include representing the City in age discrimination cases or other areas of labor law that [raise] issues that significantly overlap with the issues raised in his lawsuit, then there may be a 'significant risk that the representation of [the City] will be materially limited by . . . a personal interest of the lawyer.'" (*Id.* at 127).

Meltzer was returned to full pay status on October 14, 2008 and received back pay. (*Id.* at A130-131). The City Solicitor, John Sheridan, outlined Meltzer's revised duties in an October 10, 2008 memorandum and stated that Meltzer would not be assigned to cases dealing with discrimination or retaliation. *Id.* Meltzer has subsequently been assigned matters under the Freedom of Information Act, land use cases, and red light and parking violation cases. Meltzer has also been assigned to at least one case involving claims under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*.

## II.    LEGAL STANDARDS

### A.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or

4

weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita*, 475 U.S. at 587. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Anderson*, 477 U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B.    Retaliation Claim

In the absence of direct evidence of retaliation, retaliation claims under the ADEA typically proceed under the familiar *McDonnell-Douglas* framework. *See Alred v. Eli Lilly & Co.*, 771 F. Supp. 2d 356, 365 (D. Del. 2011) (citing *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005)). Under the *McDonnell-Douglas* burden shifting test, a plaintiff must first establish a prima facie case of retaliation. If the plaintiff establishes this prima facie case, the burden of production shifts to defendant to assert a legitimate, non-discriminatory reason for the adverse employment decision. If defendant sets forth such a reason, the burden of production shifts back to the plaintiff, who must then proffer evidence that the employer's reason is pretextual. A plaintiff may defeat summary judgment by either discrediting the defendant's proffered reasons or adducing evidence that discrimination was more likely than not a determinative cause of the

5

adverse action. *See Anderson v. Wachovia Mortg. Co.*, 621 F.3d 261, 270-71 (3d Cir. 2010).

In order to establish a prima facie case of retaliation under the ADEA, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002) (citations omitted). A complainant must show that he or she has suffered a materially adverse employment action. *Wichter v. Sodexho, Inc.*, 478 F. Supp. 2d 663, 675 (D. Del. 2007), *aff'd*, 247 F. App'x 328 (3d Cir. 2007) (internal citations omitted). Specifically, the plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means that it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Santana v. Del. Dept. of Health and Social Servs.*, 2008 WL 399639, at *9 (D. Del. Feb. 13, 2008) (internal quotations omitted).

If an employee establishes a prima facie case of retaliation, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the alleged retaliatory action." *Zechman v. Christiana Care Health Sys.*, 2007 WL 1891123, at *6 (D. Del. June 26, 2007). If the defendant satisfies this burden, "the plaintiff must prove by a preponderance of the evidence that the allegedly legitimate reasons offered by the defendant were a pretext for retaliation." *Id.* Thus, the "plaintiff must produce sufficient evidence to raise a genuine issue of [material] fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 504 (3d Cir. 1997). The plaintiff must demonstrate the proffered reasons are a pretext by showing "such weaknesses,

6

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the [asserted] non-discriminatory reasons." *Fuentes v. Perksie*, 32 F.3d 759, 765 (3d Cir. 1984).

Meltzer alleges that the City engaged in adverse employment action by (1) demanding he secure an opinion from the Ethics Committee; (2) materially adversely changing his job duties; (3) refusing to conduct a due process hearing; and (4) suspending him without pay or benefits.

## III.   DISCUSSION

It is undisputed that Meltzer engaged in protected activity when he filed a charge of age discrimination with the Delaware Department of Labor and later filed a complaint in the Superior Court. Meltzer, thus, has established the first element of his prima facie case as to the challenged actions. The parties dispute whether the challenged actions are adverse or whether there is a causal connection between Meltzer's filing of the charge and complaint and the City's actions. The parties also dispute whether the City has articulated legitimate, non-retaliatory reasons for its actions and whether those reasons are pretext for retaliation.

### A.   Request for Ethics Opinion

Meltzer asserts that the City's request for an ethics opinion is retaliatory and constitutes an adverse employment action because he provided authorities supporting his position that there was no conflict of interest, the City unreasonably delayed in making its demand for the opinion, the ethics opinion ultimately did not differ from the authorities provided by Meltzer, and other alternatives were available to the City. (D.I. 51 at 16). The City responds that the authorities provided by Meltzer were inapplicable and distinguishable, it did not unreasonably delay in

7

requesting the opinion, and the Committee's opinion differs from the authorities and expert opinion provided by Meltzer. (D.I. 59 at 5-6). The City also argues that the ethical issue here was not one the City had faced before and, therefore, distinguishes Meltzer's case from other potential ethical concerns it had faced in the past. (*Id.* at 6-7). The City further argues that attorneys are encouraged to seek guidance from the Committee on ethical issues and, therefore, there is no stigma attached to requesting an opinion. (*Id.* at 8-9).

Meltzer first argues that he provided authorities that demonstrate that the state court action did not preclude his continued employment with the City. This assertion alone does not lead to the conclusion that the City's request for an ethics opinion was retaliatory. The City responded in a January 31, 2008 letter setting forth its position that the authorities provided by Meltzer were distinguishable and inapplicable. Although the City did not provide authority to the contrary, the issue was one as to which reasonable parties might disagree. That the City did not agree that the authorities provided by Meltzer conclusively established that there was no conflict of interest does not mean that its request for an opinion was retaliatory.

Furthermore, Meltzer's position that he cited controlling authority conflicts with the Committee's opinion. Specifically, the opinion notes that "[t]here does not appear to be any Delaware case law helpful to the question at hand." (D.I. 49 at A125). The opinion also notes that, although the authority from other jurisdictions cited by Meltzer is helpful, "none appear to be sufficiently on point to warrant complete deference." (*Id.* at A129). The Committee's opinion also suggests that Meltzer be restricted from handling age discrimination cases or other related cases (*id.* at A127), a position not set forth by Meltzer or the authorities or expert opinion he provided.

8

The City also did not unreasonably delay in requesting the opinion. The City requested

the opinion a few weeks after Meltzer filed the complaint in the Superior Court. It was

reasonable for the City to wait to request the opinion until it became clear that Meltzer would

press his charge of discrimination. In addition, Meltzer was working at the U.S. Attorney's

office during the pendency of his charge of discrimination with the EEOC. Therefore, he was not

handling labor and employment matters for the City so the issue of a potential conflict was not

raised at that time.

Finally, Meltzer argues that the City previously addressed potential ethical concerns in

other ways, including conducting internal research or securing a neutral opinion from outside

counsel, but did not do so in this case. Although it is true that other alternatives were available to

the City, the City's choice to request an opinion from the Ethics Committee from among the

alternatives available to it does not mean that request was retaliatory. As noted, the issue here

presented a unique and novel question, and the parties disagreed whether there were authorities

on point. In this context, the City's request for a free ethics opinion from a neutral body cannot

be seen as adverse.

Accordingly, Meltzer has not established a prima facie case of retaliation as to the City's

request for an ethics opinion because he has not established that such request was an adverse

employment action.

Even if Meltzer could establish a prima facie case of retaliation, the City has articulated

legitimate, non-retaliatory reasons for why it requested the ethics opinion. The City believed that

Meltzer's representation of the City in employment discrimination and retaliation matters may

present a conflict of interest in light of his status as a plaintiff suing the City for discrimination

9

and retaliation.² The City's belief that the Ethics Committee was the appropriate body to provide an opinion on this issue rather than engaging in a battle of experts with Meltzer was reasonable. The Committee is a neutral body³ and, although the City does not make this argument expressly, would provide the opinion for free. Engaging in a battle of experts would be far more expensive for both Meltzer and the City. The City, therefore, has articulated legitimate reasons for its decision to request an opinion from the Ethics Committee.

The burden, thus, shifts back to Meltzer to prove that the City's reasons for requesting the ethics opinion are pretextual. Meltzer "must show, not merely that [the City's] proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). Meltzer has presented no evidence that the City's articulated reasons for requesting the ethics opinion are pretextual. For the same reasons that the City's actions did not constitute adverse employment action, they are not pretext for retaliation. Meltzer argues that a reasonable person in Meltzer's position with an "unblemished ethical record" might be dissuaded from enforcing his employment rights if faced with a potential request for an ethics opinion. As the City points out, Meltzer testified that no one (except Meltzer himself) holds him in lower esteem as a result of seeking an advisory opinion. (D.I. 48 at 16; D.I. 49 at A51). If Meltzer was not concerned that there was any

---

²       This belief is all the more reasonable in light of the April 2008 opinion issued by the Ethics Committee to the City. That opinion cautioned the City to "not ratify any conduct causing a violation in the [ethics rules]" and to "take remedial action so the employee attorney is not in violation." (D.I. 49 at A69).

³       The City reasonably might have wanted a neutral opinion because it was reasonable to assume that anything less, including an expert opinion procured on behalf of the City, would not be the "final" word on any potential conflict of interest, particularly if it obtained an opinion that contradicted Mr. Slanina's opinion or the authorities provided by Meltzer.

potential ethical issue, an opinion from the Committee would only confirm that there was no ethical issue.[4]

Accordingly, the Court concludes that Meltzer's claim of retaliation as to the City's request for an ethics opinion fails as a matter of law.

## B. Change in Job Duties

Meltzer argues that his change in job duties is retaliation because "[r]eassignment to more arduous and less desirable duties . . . might well dissuade a reasonable person from pursuing [his] employment rights." (D.I. 51 at 19). The City argues that the change in Meltzer's job duties is not an adverse action because the change was not substantial and was consistent with the Ethics Committee opinion. (D.I. 48 at 7-12).

The change in Meltzer's job duties does not constitute an adverse action. Although his assignments changed to duties he considers "more arduous and less desirable," Meltzer retained his position as an attorney for the City and also retained his same title and pay. The Eleventh Circuit has held that a change in job assignments or work-related duties may only be adverse employment action if the change is substantial and material and it alters the terms, conditions, or privileges of employment. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1245 (11th Cir. 2001). In *Davis*, the Eleventh Circuit noted that "Title VII is not designed to make federal courts sit as a super-personnel department and examine an entity's business decisions." *Id.* at 1244

---

[4]     Meltzer argues that he was concerned that the Ethics Committee opinion would be public and, although he would not be identified by name in the opinion, his identity would be easily guessed based on the facts presented. This argument might have some merit if seeking an ethics opinion from a neutral body carried some stigma, but it does not. To the contrary, being careful is usually considered to be a praiseworthy trait in a lawyer. There can be no claim that disclosure of Meltzer's disputes with his employer would be adverse, as the disputes were already being aired in a public forum.

11

(internal quotations and citations omitted). The Court also expressed its belief that " in the vast majority of cases . . . an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause." *Id.* at 1245; *see also Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (agreeing with "other circuits [which] have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes."). Because the changes in Meltzer's job duties do not constitute an adverse action, Meltzer has failed to establish a prima facie case of retaliation.

Even assuming Meltzer could establish a prima facie case of retaliation, the City has articulated a legitimate reason for changing Meltzer's job duties. Specifically, the City has stated the change in job duties is consistent with the Ethics Committee opinion's conclusion that Meltzer be shielded from cases involving issues that overlap with his case against the City. The City notes that Meltzer has not been assigned a subset of employment matters, specifically litigation and EEOC charges relating to discrimination and retaliation. (D.I. 48 at 11). Meltzer also has not been assigned requests for legal opinions regarding whether certain individual employees were entitled to administrative or due process hearings. (*Id.*). The City's reading of the Ethics Committee opinion and the limitations it places on Meltzer's duties to avoid a conflict of interest is reasonable. Indeed, in the Court's opinion, the City Solicitor would have been foolhardy not to do what he did.

The burden, thus, shifts back to Meltzer to prove pretext. Meltzer argues that he was assigned to one employment matter under the Rehabilitation Act and, therefore, the City's

12

articulated reason must be pretext because that assignment is inconsistent with the City's reading

of the ethics opinion. (D.I. 66 at 9). As the City explained, however, Meltzer was assigned that

case only after his supervisors discussed the nature of the case and determined that it was

"sufficiently different from the average discrimination or retaliation case." (D.I. 49 at A104-

105). This decision is consistent with the ethics opinion, which provides that "senior lawyers

have authority to delegate assignments to [Meltzer] and should implement appropriate

safeguards," including not assigning cases that "significantly overlap with the issues raised in his

lawsuit." (*Id.* at A127-28).

Accordingly, the Court concludes that Meltzer's claim of retaliation as to the change in

his job duties fails.

### C.    Due Process

Meltzer argues that the City's refusal to hold a due process hearing was retaliatory. The

City responds that its refusal to hold a due process hearing was not an adverse employment

action, citing to a number of cases from the District of Kansas. *See, e.g.*, *Kitchen v. Burlington

N. & Santa Fe Railway Co.*, 298 F. Supp. 2d 1193, 1204-05 (D. Kan. 2004); *Kennedy v. Gen.

Motors Corp.*, 226 F. Supp. 2d 1257, 1268 (D. Kan. 2002).

Whether the City's refusal to hold a due process hearing is an adverse action is a closer

call than the City's request for an ethics opinion or the change in Meltzer's job duties. As

Meltzer points out, the City did not outright deny Meltzer's request for a due process hearing but,

in fact, ignored the request altogether. The City also does not deny that it had previously

afforded Meltzer a hearing in the past. The Third Circuit addressed a similar issue in *Fasold v.

Justice*, 409 F.3d 178 (2005). In *Fasold*, the Third Circuit held that "even if Defendants were

13

justified in firing Fasold and denying his Level I grievance, they would not be free from liability

if they denied Fasold's Level II grievance because he had filed an administrative complaint." *Id.*

at 189. The Court further clarified:

> The Supreme Court has held that the mere fact that an employer
> has no obligation to a certain benefit does not mean that the
> employer is free to administer such a benefit in a discriminatory
> fashion. Thus, even if the Level II grievance proceeding was a
> matter of grace rather than right, Defendants are nonetheless not
> permitted to reject Level II grievances because of retaliatory
> animus.

Thus, whether Meltzer was entitled to a due process hearing is not the only relevant

determination. The fact that he was afforded due process in the past and was denied it only after

he filed the complaint in state court is evidence that it was retaliatory. Meltzer, therefore, has

established that the City's refusal to hold a due process hearing was an adverse action. Meltzer

also has set forth sufficient evidence to establish that there is a causal connection between the

City's refusal to hold the due process hearing and Meltzer's filing of the discrimination charge

and complaint in that the City did not refuse a due process hearing until after he filed the

complaint in state court. Meltzer, thus, has established a prima facie case of retaliation with

respect to the City's refusal to hold a due process hearing.

   Even though Meltzer has established a prima facie case of retaliation with respect to the

refusal to hold a due process hearing, the City has articulated a legitimate, non-discriminatory

reason. The City asserts that the sections of the City Code concerning due process rights of

employees are not applicable to Meltzer because they apply only to positions in the classified

service system. As an appointed person, Meltzer is exempt from the provisions applicable to

classified service employees, including the right to a due process hearing. (D.I. 49 at A4-5, A-

14

76-77). The City's position is consistent with the testimony of Brenda James-Roberts, Meltzer's supervisor, who testified that, in her 25 years working in the City Law Department, an appointed employee has never been afforded use of the grievance process. (*Id.* at A84). The parties dispute whether the personnel manual would apply to Meltzer as an appointed employee. (D.I. 48 at 14; D.I. 57 at 14-15). However, even if the personnel manual applied to Meltzer, the relevant provision would not apply because it was the City's position that Meltzer was not placed on unpaid leave for disciplinary reasons. (*Id.* at A76-77). The City, thus, has articulated a legitimate reason for refusing a due process hearing to Meltzer.

The burden shifts back to Meltzer to prove pretext. Meltzer argues that the City previously provided him a due process hearing in an unrelated matter and that establishes that the City's legitimate reason is pretextual. The City rebuts this argument with evidence that the City's prior grant of a due process hearing was a courtesy and the City had made clear that Meltzer was not otherwise entitled to a hearing. (*See* D.I. 49 at A153) (Letter from the Chief of Staff stating that "[i]t seems that you are not entitled to pursue the grievance process due to the fact that you are not a classified employee. However, to ensure your concerns are efficiently and effectively addressed, I agree to utilize the grievance procedure outlined in Section 40-272, *et seq.*, in an effort to resolve the issues raised in your letter."). The fact that he was permitted a hearing on one occasion, as a courtesy, does not create an entitlement to a hearing. Meltzer, therefore, has failed to offer any evidence that the City's articulated reason is pretextual.

Accordingly, the Court concludes that Meltzer's claim of retaliation as to the City's refusal to hold a due process hearing fails.

### D. Suspension Without Pay or Benefits

15

Meltzer argues that his suspension without pay or benefits for two months is retaliatory.[5]
Meltzer argues, with some force, that it is easy to see how a reasonable employee who is barred
from coming to work, not paid, and threatened with termination might well consider those
actions disciplinary. (D.I. 57 at 17). The City argues that any harm to Meltzer was "entirely self-
imposed" and could have been avoided if Meltzer had asked for the ethics opinion when the City
requested it. (D.I. 48 at 17).

The Court concludes that Meltzer's suspension without pay or benefits is an adverse
action. The facts here are similar to those addressed by the Supreme Court in *Burlington
Northern & Santa Fe Railway Co. v. White*. 548 U.S. 53 (2006). In *Burlington*, the employee
was suspended for 37 days without pay before ultimately being reinstated with backpay. *Id.* at
58-59. The Court held that the jury reasonably concluded that the "37-day suspension without
pay was materially adverse" because "[m]any reasonable employees would find a month without
a paycheck to be a serious hardship." *Id.* at 72-73. Here, it is, thus, immaterial that Meltzer
ultimately received back pay. The action of suspending him without pay or benefits was adverse.

Meltzer has also presented sufficient evidence of a causal connection with respect to his
suspension. The City's request for an ethics opinion clearly relates to his filing of the complaint
in the state court action. His suspension without pay and benefits is the result of his refusal to
obtain the ethics opinion. If Meltzer had not filed the state court complaint (or the earlier charge

---

[5]     The City argues that Meltzer, in fact, did receive benefits during this period.
However, it is undisputed that the communications sent to Meltzer indicated that his suspension
would be without pay or accumulation of benefits. (D.I. 49 at A73, A75, A118). The City has
not presented evidence that Meltzer was aware that he was continuing to receive benefits while
suspended. The Court, thus, will assume for purposes of this opinion that Meltzer's suspension
was without benefits.

of discrimination), he would not have been placed on unpaid leave for failing to get the ethics opinion the City requested as a result of his filing the state court complaint. Meltzer, therefore, has established a prima facie case of retaliation with respect to his suspension without pay.

The City responds that any alleged adverse employment action is of Meltzer's own making. (D.I. 48 at 17). The City distinguishes this case from the facts in *Burlington*. First, the City argues that, unlike the employee in *Burlington*, Meltzer's placement on unpaid leave was not disciplinary. (D.I. 49 at A160; *id.* at A94-95). Rather, Meltzer was placed on leave because he refused to obtain the ethics opinion. As discussed, the City had reasonable concerns about a potential conflict of interest and did not believe that the City could continue to employ Meltzer in the absence of an opinion concluding that there was no conflict of interest. The City also demonstrated its good faith by providing multiple opportunities to Meltzer to obtain the opinion, including placing him on paid leave at the City's expense for nearly three months from February 22, 2008 through May 15, 2008. Then, as it had previously agreed to do, the City provided Meltzer with a sabbatical. Had Meltzer asked for the ethics opinion when the City first requested it, it is extremely likely that it would not have been necessary to place him on unpaid leave.[6] Placing Meltzer on unpaid leave was not a form of punishment but rather the protection the City thought necessary to avoid a conflict of interest.[7]

---

[6]     Once Meltzer asked for the opinion, the Ethics Committee issued it in a little over two months. The City had been asking for the opinion for over six months before Meltzer took any steps to obtain it.

[7]     It is also worth noting that an employer facing a discrimination case filed by a still-employed employee is in a minefield with respect to any personnel decisions concerning that employee. The City faced an ever-present risk of Meltzer filing a retaliation claim for any decision concerning his employment.

17

The facts in *Burlington* are different for yet another reason. The suspension in *Burlington* was indefinite. 548 U.S. at 73. As the Supreme Court noted in that case "an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay." *Id.* Here, Meltzer was in control of whether he was placed on unpaid leave and, to a certain extent, when such leave would end. The City, thus, has articulated a legitimate, non-discriminatory reason for its action.

The burden, therefore, shifts back to Meltzer to prove that the City's reason is pretextual. Meltzer has not provided any evidence of pretext. The City's belief that there was a potential conflict of interest was reasonable. The evidence is undisputed that the City's concern was genuine. When Meltzer would not get the opinion, the City tried to get it itself. Once the City got the opinion from Meltzer, the City promptly followed it. It asked Meltzer to request the ethics opinion on more than one occasion and even placed Meltzer on paid leave for nearly three months before ultimately placing him on unpaid leave. For over six months, Meltzer refused to request the ethics opinion. Thus, any harm to Meltzer was self-imposed and could have been avoided. Such harm is not evidence of pretext.

Accordingly, the Court concludes that Meltzer's claim of retaliation as to his suspension without pay and benefits fails.

## IV.    CONCLUSION

For the reasons set forth above, the Court will grant Defendant City of Wilmington's motion for summary judgment (D.I. 47) and deny Plaintiff Meltzer's motion for summary judgment (D.I. 50). A separate Order, consistent with this Memorandum Opinion, will be entered.

18